UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTOINETTE HUMES | : | |
| | : | 3:14-cv-00106 (AWT) |
| Plaintiff | : | |
| v. | : | |
| | : | |
| KERON BRYCE | : | |
| | : | DECEMBER 14, 2015 |
| Defendant | : | |

## DEFENDANT'S TRIAL MEMORANDUM

**1.   TRIAL COUNSEL:**

**For the Plaintiff:**

John R. Williams, Esq.
John R. Williams and Associates, LLC
51 Elm Street, Suite 409
New Haven, CT 06510
Telephone: (203) 562-9931
E-Mail: jrw@johnrwilliams.com

**For the Defendant:**

Michael A. Wolak, III
Senior Assistant Corporation Counsel
Office of the Corporation Counsel - City of New Haven
165 Church Street, Fourth Floor
New Haven, CT 06510
Tel. #: (203)946-7970
E-mail: mwolak@newhavenct.gov

**2.   JURISDICTION:**

The basis for the court's federal jurisdiction is Sections 1331, 1343(3) and 1367(a) of Title 28 and Sections 1983 and 1988 of Title 42 of the United States Code.

**3.   JURY/NON-JURY:**

This is a non-jury case.

4. **LENGTH OF CASE:**

Should not take longer than two (2) days.

5. **FURTHER PROCEEDINGS:**

None anticipated at this point.

6. **NATURE OF CASE:**

Plaintiff alleges in her Complaint that during the afternoon of October 11, 2013, she was arrested by the defendant, a New Haven police officer, on the charge of interfering with a police officer, and that this charge was subsequently nolled. Plaintiff, at the time of her arrest, was employed as a security guard at the New Haven Housing Authority residence located at 358 Orange Street in New Haven, Connecticut. Plaintiff's arrest arose out of an incident involving a resident at the Housing Authority facility and an individual later identified as the plaintiff's boyfriend. This incident, which occurred in the lobby of the facility, began as a verbal confrontation that escalated to where the resident suffered a significant injury when the plaintiff's boyfriend threw a metal clipboard at him that struck the resident in the head. The defendant responded to the incident involving the plaintiff's boyfriend and the resident, and received information from another resident that indicated to him that the plaintiff had taken actions that aided her boyfriend in leaving the scene prior to the arrival of the police and had put the clipboard used in the assault back into the desk in the lobby. In addition, the plaintiff was evasive while responding to questions from the defendant concerning her

boyfriend. The plaintiff disputes that she did anything to aid her boyfriend in this incident.

Plaintiff alleges that the defendant treated her roughly during the course of her arrest, which she has alleged to have been unlawful. Additionally, it is claimed that the plaintiff was terminated from her employment as a result of her arrest and that she was not able to collect unemployment compensation. Plaintiff claims that as a result of the above she suffered physical pain and emotional distress, and that she was subjected to false arrest, unreasonable force and malicious prosecution, all in violation of the Fourth Amendment to the United States Constitution.

Defendant has denied the material allegations of plaintiff's Complaint, and has pled the affirmative defense of qualified immunity.

7. **TRIAL BY MAGISTRATE JUDGE:**

The parties have not consented to a trial before a Magistrate Judge.

8. **WITNESSES/EXHIBITS:**

   (a) **DEFENDANT'S LIST OF WITNESSES:**

   i.  Defendant Keron Bryce. Business Address: New Haven Department of Police Service, One Union Avenue, New Haven, CT 06519. It is anticipated that Defendant Bryce will testify as to his background, education, training and experience as a police officer, his knowledge of the location where the October 10, 2013, incident took place, the information that he received from other residents and his observations of, and his interactions with, the plaintiff on October 10, 2013.

ii.     Officer Amaro Vitale.  Business Address:  New Haven Department of Police Service, One Union Avenue, New Haven, CT  06519.  It is anticipated that Officer Vitale will testify as to his background, education, training and experience as a police officer, his knowledge of the location where the October 10, 2013, incident took place, the information that he received from other residents and his observations of, and his interactions with, the plaintiff on October 10, 2013.

iii.    Glynis Terry.  Address: 358 Orange Street, New Haven, CT  06510.  It is anticipated that Ms. Terry will testify as to her observations concerning the incident that brought the defendant to 358 Orange Street in New Haven, the interaction of the plaintiff with her boyfriend, Joseph Birch, subsequent to the incident and as to what she told an investigating officer concerning what was being done by the plaintiff to aid her boyfriend.

iv.    Ted Quinones.  Address:  Believed to be 358 Orange Street, New Haven, CT  06510, but not certain.  It is anticipated that Mr. Quinones will testify as to his observations concerning the incident that brought the defendant to 358 Orange Street in New Haven, the interaction of the plaintiff and her boyfriend, Joseph Birch, subsequent to the incident and as to what he told an investigating officer concerning what was being done by the plaintiff to aid her boyfriend.

v.     Keeper of Records for the New Haven Department of Police Service, or his/her designee, One Union Avenue, New Haven, CT  06519.  For purposes of authentication of records of the New Haven Department of Police Service, if necessary.

### (b) DEFENDANT'S LIST OF EXHIBITS:

Defendant's Exhibit 500:   Surveillance video relevant to the events set forth in the plaintiff's Complaint.

Defendant's Exhibit 501:   CAD Reports of the New Haven Department of Police Service relevant to the incident alleged in the plaintiff's Complaint.

Defendant's Exhibit 502:   Radio Transmissions of the New Haven Department of Police Service relevant to the incident alleged in the plaintiff's Complaint.

Defendant's Exhibit 503:   Case Incident Report, Complaint No. 13-48050, prepared by the defendant concerning the incident alleged in the plaintiff's Complaint.

The defendant reserves the right to introduce evidence not contemplated here for rebuttal or impeachment purposes.

### 9. STIPULATIONS AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW:

#### (a) BENCH TRIAL:

DEFENDANT'S PROPOSED FINDINGS OF FACTS:

1. Defendant Keron Bryce, at all times relevant to the plaintiff's Complaint, was a New Haven police officer acting under color of law. (This fact is undisputed by the parties.)

2. At all times relevant to the plaintiff's Complaint, Amaro Vitale was a New Haven police officer acting under color of law. (Anticipated testimony of Officer Amaro Vitale.)

3. On October 10, 2013, at approximately 4:24 p.m., Defendant Bryce and Officer Vitale were dispatched to the lobby of the New Haven Housing Authority

facility located at 358 Orange Street, New Haven, Connecticut on the report of an assault with a dangerous weapon, non-firearm. (Anticipated testimony of Defendant Bryce and Officer Vitale, and, if necessary, the CAD Report and/or radio transmissions of the New Haven Department of Police Service.)

4. Prior to the arrival of Defendant Bryce and Officer Vitale to the lobby of 358 Orange Street, personnel from the New Haven Fire Department and American Medical Response had arrived on scene and had provided treatment to the alleged victim of the assault, identified as Michael Brown, who was reported to have sustained a large laceration to his forehead. (Anticipated testimony of Defendant Bryce and Officer Vitale, and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

5. Defendant Bryce attempted to speak with Michael Brown, the victim of the assault, prior to his transport to the hospital, but due to his apparent ingestion of alcohol could not obtain any useful information. (Anticipated testimony of Defendant Bryce.)

6. Defendant Bryce spoke to Warren Coleman, who identified himself as a friend of the assault victim, and who reported to the defendant that he had witnessed the incident. (Anticipated testimony of Defendant Bryce, and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

7. Mr. Coleman reported to Defendant Bryce that he and the assault victim, Mr. Brown, were in the lobby at 358 Orange Street when Mr. Brown became

involved in an argument with an unknown male, who then grabbed an object from a table in the lobby, possibly a binder or clipboard, and threw it at Mr. Brown, striking him in the forehead. (Anticipated testimony of Defendant Bryce, and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

8. Mr. Coleman also reported to the defendant that the unknown male left the building, and that the unknown male's mother, Dawn Robinson, was a resident at this Housing Authority facility. (Anticipated testimony of Defendant Bryce, and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

9. Officer Vitale spoke to another individual by the name of Glynis Terry who reported to him that she had witnessed the incident involving Mr. Brown, and that she had seen an individual who she identified as "Joseph Robinson" punch and kick Mr. Brown as he attempted to enter an elevator, that the punching and kicking were unprovoked, and that Mr. "Robinson" then threw a metal clipboard at Mr. Brown causing a large forehead laceration. (Anticipated testimony of Defendant Bryce, Officer Vitale and Glynis Terry and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

10. Glynis Terry further reported to Officer Vitale that the plaintiff, who was a security officer at the facility, did not witness the actual incident, but arrived on scene, spoke to Mr. "Robinson," who stated to the plaintiff that he was going to the apartment of Dawn Robinson, but the plaintiff gave him her car keys and told

him to go to her house, at which point the individual identified as "Joseph Robinson left the building. (Anticipated testimony of Defendant Bryce, Officer Vitale and Glynis Terry and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

11.   Officer Vitale also spoke to an individual by the name of Ted Quinones who told this officer that he witnessed Mr. Brown and an unknown male fighting, that he broke up the fight and told the unknown male to leave the building, and that he observed the plaintiff give the unknown male a set of keys before he left the building. (Anticipated testimony of Defendant Bryce, Officer Vitale and Ted Quinones and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

12.   Officer Vitale informed the defendant of what had been reported to him by Glynis Terry and Ted Quinones. (Anticipated testimony of Defendant Bryce and Officer Vitale and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

13.   The defendant then spoke with the plaintiff who reported to him that when she first came to work on October 10, 2013, Mr. Brown was sitting in the lobby, and was saying obscene and vulgar things to her, and that Mr. Brown and an "unknown male" were arguing. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

14. When the defendant asked the plaintiff if she knew the identity of the "unknown male" she "hesitantly" stated that it was her fiancé, Joseph Birch. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

15. The plaintiff reported to the defendant that Mr. Birch had arrived at the facility to visit his mother, Dawn Robinson, who was not at home, that Mr. Brown began using vulgar and obscene language towards Mr. Birch, and that Mr. Brown and Mr. Birch began to argue. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

16. The plaintiff further reported to the defendant that while Mr. Brown and Mr. Birch were arguing she left to assist a resident in the rear of the building, and that when she returned the lobby the two men were still arguing. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

17. The plaintiff then reported to the defendant that she got between the Mr. Brown and Mr. Birch in an attempt to break them up and defuse the situation but that Mr. Birch grabbed a mental clipboard from a table in the lobby and threw it at Mr. Brown, causing a head laceration. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

18. The plaintiff retrieved from a drawer of the table in the lobby a large silver metal clipboard tin upon which the defendant did not observe any blood, even though papers in the same drawer had blood on them. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

19. The defendant asked the plaintiff is she had washed the blood from the clipboard and she "hesitantly" stated no. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

20. The defendant asked the plaintiff if she knew Mr. Birch's cellphone number and she told the defendant that she did not, further stating that Mr. Birch's cellphone number was in her cellphone that she had forgotten at home. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

21. The plaintiff borrowed a cellphone from another individual and walked away from the defendant, contacting an unknown individual, and when the plaintiff approached her to determine with whom she was speaking, she immediately hung up, and was now able to give to the defendant Mr. Birch's cellphone number. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

22. Mr. Birch was convinced to return to 358 Orange Street and he was subsequently arrested for assault in the second degree (§53a-60), reckless

endangerment in the second degree (§53a-64) and disorderly conduct (§53a-182). (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

23. The plaintiff was arrested for interfering with a police officer (§53a-167a), handcuffed, and transported to the lock-up at One Union Avenue in New Haven. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

24. The defendant had probable cause to arrest the plaintiff. (Anticipated testimony of Defendant Bryce and Officer Vitale and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

25. The plaintiff, during the course of her arrest, was not subjected to unreasonable force by the defendant. (Anticipated testimony of Defendant Bryce and, if necessary, the Case Incident Report, Complaint No. 13-48050, prepared by the defendant.)

DEFENDANT'S CONCLUSIONS OF LAW:

1. The defendant had probable cause to arrest the plaintiff and therefore her claim for False Arrest cannot succeed.

Plaintiff's claim for false arrest fails under 42 U.S.C. § 1983 because the defendant had probable cause to arrest Plaintiff. "'A § 1983 false arrest claim requires the plaintiff to establish that (1) the defendant intentionally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause.'" (Citations omitted.) Shattuck v. Town of Stratford, 233 F. Supp. 2d 301, 306 (D. Conn. 2002). If probable cause

existed for the arrest, then the plaintiff cannot satisfy the elements of a false arrest claim § 1983. Id. at 307. "'The threshold issue for the court is whether, on the facts alleged, [the plaintiff's] right to be free from arrest without probable cause was violated. This question is primary... for a § 1983 false arrest... analysis... [because] the existence of probable cause is a complete defense to a civil rights claim alleging false arrest...'" Id.

Probable cause exists under federal law when "the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in belief that an offense has been committed by the person to be arrested." Lemon v. Miller, 66 F.3d 416, 424 (2d. Cir. 1995). "When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001). The validity of an arrest does not depend upon a finding that the arrested person is guilty. Pierson v. Ray, 386 U.S. 547, 555, 87 S.Ct. 1213 (1967). "Once an officer has a reasonable basis for believing there is probable cause, he is not required to explore every theoretically plausible claim of innocence before making an arrest," Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). "In determining whether the necessary quantum of evidence existed to support a finding of probable cause, the Court is required to evaluate the totality of the circumstances." Illinois v. Gates, 462, U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). There was probable cause for the plaintiff's arrest.

    2.    The defendant did not use unreasonable force when taking the plaintiff into custody.

A plaintiff may bring a claim for excessive force used to make an arrest under Section 1983 pursuant to the provisions of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865 (1989). A police officer's use of force is excessive if it is objectively unreasonable in light of the facts and circumstances confronting that officer, without regard to the underlying intent or motivation of the officer. Id., at 397. The analysis considers the totality of the circumstances, "including the severity of the crime at issue [and] whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." Sullivan v. Gagnier, 225 F.3d 161, 165 (2d Cir. 2000). "To sustain a claim of excessive force, a plaintiff must present sufficient evidence to establish that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable." (Internal quotation marks omitted.) Drummond v. Castro, 522 F.Supp. 2d 667, 678 (S.D.N.Y. 2007). Moreover, "a *de minimis* use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d. Cir. 1993). No evidence has been produced by the plaintiff in discovery that would lead to a finding that the defendant used excessive force in this matter.

3. The plaintiff's claim of malicious prosecution fails because her arrest was made with probable cause and without malice

"Claims of false arrest or malicious prosecution under section 1983 are comparable to the same claims brought under state law." Clark v. Dowty, 2007 WL 2022045, *4, (Eginton, J., July 9, 2007) (D.Conn.), citing Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). "In order to assess a claim of false arrest or malicious prosecution under section 1983, the Court generally looks to the law of the state in

which the arrest occurred." Clark v. Dowty, supra, citing Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004).

A malicious prosecution claim "requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) *the criminal proceedings have terminated in favor of the plaintiff;* (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." (Emphasis in original) Miles v. City of Hartford, supra, quoting McHale v. W.B.S. Corp., 187 Conn. 444, 447, 446 A.2d 815 (1982). The plaintiff in this case would have the burden of proving that the defendant acted without probable cause and that he acted with malice.

## 10.  OBJECTIONS:

The defendant objects to any medical reports or testimony that were not provided in discovery. The defendant would further reserve the right to object to witnesses not listed in his answers to Interrogatories, but who are then listed in the plaintiff's Trial Memorandum.

- 15 -

THE DEFENDANT,
KERON BRYCE

BY: _____/s/_____
Michael A. Wolak, III
Assistant Corporation Counsel
City of New Haven
Office of Corporation Counsel
165 Church Street
New Haven, CT 06510
Tel. #: (203)946-7970
Fax #: (203) 946-7942
E-mail: mwolak@newhavenct.gov
Fed. Bar #ct12681
His Attorney

## **CERTIFICATION**

I hereby certify that on December 14, 2015, the Defendant's Trial Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to any one unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

_____/s/_____
Michael A. Wolak, III